T.H. v City of New York (2026 NY Slip Op 50361(U))

[*1]

T.H. v City of New York

2026 NY Slip Op 50361(U)

Decided on March 18, 2026

Supreme Court, New York County

Chesler, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 18, 2026
Supreme Court, New York County

T.H., Plaintiff,

againstCity of New York, S.F., T.K., Defendant.

Index No. 155228/2025

Counsel for Plaintiff:Law Office of John A. Scola, PLLC90 Broad Street, Suite 1023New York, New York 10004By: John A. Scola, Esq.Counsel for Defendants (The City of New York and T.K.):The New York City Law Department100 Church StreetNew York, New York 10007By: Conner Quinn, Esq.Counsel for Defendants (S.F.): 
The Sanders Firm, P.C.30 Wall Street, St. Fl. 8New York, New York 10005By: Eric Sanders, Esq.

Ariel D. Chesler, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 4, 5, 6, 7, 8, 9, 10, 11, 12 were read on this motion to/for DISMISSAL.
Upon the foregoing documents, it isBACKGROUNDIn this case, plaintiff, who identifies as a Black woman and lesbian, and who is a current Lieutenant in the New York City Police Department ("NYPD"), brings claims against the City of New York, and S.F. and T.K., individually.
Pursuant to the State and City Human Rights Law, plaintiff alleges gender and sex discrimination, sexual harassment, retaliation and hostile work environment were created by the defendants.
Plaintiff alleges that defendant S.F., a Detective Specialist with the NYPD, is her ex-lover, and that S.F. worked under T.K., who is a current 1st Deputy Commissioner in the NYPD and seven ranks above plaintiff. She alleges that T.K. was connected to others in the NYPD who had significant influence throughout the NYPD.
Although plaintiff and defendant S.F. had a consensual relationship for some time, plaintiff claims she was subjected to a campaign of harassment and stalking by S.F. over a period of nine months. Specifically, she alleges that she continuously received text messages from anonymous numbers which included photographs of plaintiff, information about her location, and messages which were sexual in nature. This harassment came from over seventy numbers and included thousands of text messages. According to plaintiff, S.F. also sent herself harassing messages as part of her campaign and as a ruse. Additional messages were also sent to various colleagues of plaintiff.
Plaintiff claims that she and S.F. ended their relationship in April 2024 but remained friends and had a consensual sexual encounter in June 2024.
Plaintiff also claims that the City was aware of the above concerns and in fact that an intervention was held after which defendant S.F. was directed to seek therapy and leave her firearms at work. In addition, plaintiff met with Assistant Commissioner A.F., the brother of defendant S.F., regarding the harassment.
In July 2024, plaintiff also reported the harassment to NYPD Internal Affairs, and filed a criminal complaint report at a precinct. Thereafter, all the officers in defendant T.K.'s office ceased speaking to plaintiff for two months and plaintiff was then reassigned/demoted to a patrol precinct despite her requested reassignment.
Plaintiff further alleges that after being promoted to Lieutenant in August 2024 she was transferred to the [XX] Precinct but denied her planned assignment as Integrity Control Officer, and stuck on patrol duty. In addition, following this assignment to the [XX] Precinct false allegations were made about plaintiff's work performance. Separately, a false claim of sexual harassment was made against plaintiff and she was then transferred to the [YY] Precinct and placed on probation.
Meanwhile, defendant S.F. was placed on modified duty and referred for possible prosecution. However, plaintiff maintains that no supervisory intervention took place for all the years she was subjected to harassment and retaliation.
In her Answer, defendant S.F. included various counterclaims against plaintiff, including violation of the Gender Motivated Violence Act ("GMVA"), as well as for harassment, hostile work environment, and retaliation pursuant to the State and City Human Rights Law.
Defendant S.F. alleges that plaintiff was the "harasser," initiated unwanted sexual contact, emotionally manipulated defendant S.F., recorded sexual acts without consent, and used her departmental authority and influence to coerce personal access and control.
According to defendant S.F., supervisory personnel and internal oversight bodies within the NYPD—including the Office of Equity and Inclusion and Internal Affairs Bureau— were aware, or should have been aware, of plaintiff's longstanding pattern of sexually inappropriate, coercive, and retaliatory conduct toward other female officers, both within and outside the workplace.
Defendant S.F. claims that she was a junior officer when she met plaintiff in September 2023. She alleges that the following month plaintiff manipulated/coerced her into sharing her personal cell phone number and that plaintiff then began sending her unsolicited messages. The messages were inappropriate and grew more frequent.
Defendant S.F. claims that plaintiff pressured and manipulated her into visiting plaintiff's residence at which point plaintiff initiated physical contact which escalated into sexual contact. Defendant maintains that she did not affirmatively consent to the encounter but felt coerced and feared workplace retaliation. Defendant S.F. further alleges that plaintiff then used this encounter as leverage to force continued contact.
According to Defendant S.F., over a period of months plaintiff grew controlling, unstable, and demanding, and used emotional blackmail. Defendant S.F. was reluctant to report anything due to plaintiff's supervisory rank and volatile behavior.
When Defendant S.F. distanced herself in January 2024 plaintiff became more erratic. The following month plaintiff made uninvited appearances to Defendant's S.F.'s job sites, and at other times at her precinct. Defendant claims that plaintiff engaged in unwanted sexual conduct numerous times with her over many months and exploited her supervisory position. These included nonconsensual sex, sexual propositions, and sexual threats.
Defendant S.F. further alleges that on March 14, 2024, while on duty and in uniform, plaintiff came to the dormitory room at One Police Plaza where Defendant S.F. was sleeping. Plaintiff then entered the room, removed Defendant S.F.'s underwear and forcibly engaged in a sex act without Defendant's consent.
Thereafter, plaintiff began spreading rumors about Defendant S.F. and began threatening to make a formal complaint and pursue legal action. She also falsely claimed Defendant S.F. had engaged in stalking and harassment. According to Defendant S.F., plaintiff continued a campaign of retaliation between June and August 2024, culminating in formal disciplinary charges in December 2024 which were based on retaliatory and pretextual complaints. 
THE MOTIONPlaintiff moves to dismiss defendant S.F.'s counterclaims pursuant to CPLR 3211[a][1] and [7]. Plaintiff contends that the counterclaims are implausible and demonstrably false. In support of this claim, plaintiff relies on a series of text message exchanges between plaintiff and defendant S.F. Specifically, plaintiff highlights certain messages expressing affection, longing, and romantic desire, as well as those in which defendant S.F. repeatedly professed love, requested to see and touch plaintiff, and described her body as "the safest place on earth" (Pl. Ex. C). According to plaintiff, "these messages flatly contradict [S.F.]'s current claims of fear and abuse. They reveal a rejected romantic partner attempting to rekindle an emotional and sexual connection—not someone processing the trauma of sexual assault" (Pl. Memo of Law, pg. 2).
Plaintiff further argues that the text messages "reveal not a trace of fear, confusion, or trauma. Instead, they show someone deeply obsessed, manipulative, and unwilling to accept reality. They were sent voluntarily and repeatedly. Some were sexually suggestive. Others were emotional blackmail. But none were consistent with a person recovering from assault" (Id. at 5)
Separately, plaintiff argues that the counterclaims fail to state any cognizable legal claims because they are retaliatory and undermined by the timeline and admissions made. Finally, plaintiff claims that the counterclaims should be dismissed under New York's anti-SLAPP statutes.
[*2]DISCUSSIONPlaintiff seeks to dismiss the counterclaims based on a select group of text messages between her and defendant S.F. However, CPLR 3211(a)(1) permits dismissal only where the documentary evidence submitted is "unambiguous, authentic, and undeniable" and utterly refutes the factual allegations, conclusively establishing a defense as a matter of law (see Goshen v. Mut. Life Ins. Co. of NY, 98 NY2d 314, 326 [2002]). An executed contract definitively providing for the rights and obligations of the parties is the type of documentary evidence that might warrant a dismissal on this ground. In other words, it must be unambiguous, conclusive proof.
Accepting that text messages, emails and other communications could constitute documentary evidence, it would be exceptionally rare for such evidence to utterly refute a claim. This is because they are susceptible to multiple interpretations and require context and credibility determinations (see e.g. Art & Fashion Group Corp. v. Cyclops Prod., Inc., 120 AD3d 436, 438 [1st Dept 2014][finding emails insufficient to warrant dismissal under CPLR 3211[a][1]]).
If emails rarely suffice to warrant dismissal in the business context, it is far less appropriate to warrant or even consider dismissal here. By reviewing the competing allegations in the pleadings, it is apparent that the relationship between plaintiff and defendant S.F. was complex, complicated, confused, and contradictory, and perhaps toxic. Plaintiff's selection of certain text messages does not come close to utterly refuting any of the counterclaims. Plaintiff and defendant S.F. make competing allegations and the Court cannot determine anything with certainty based on a handful of text messages.
As defendant S.F. points out, the test messages must be evaluated in light of the specific, coercive context alleged, including the power imbalance, emotional manipulation, and explicit threats. Moreover, human reactions to abuse, trauma, coercion, domestic violence, and even assault in the context of a complicated romantic relationship may vary, appear irrational, or be quite different from what someone viewing the situation from a safe distance might do. It is hard to imagine that serious allegations in this area could ever be neatly and swiftly refuted by a few text messages. One thing is for certain. This Court will not conclude that defendant S.F. consented to any particular act or acts based on the text messages submitted in support of the motion.
The Court does not opine whatsoever on the merits of the complaint or the counterclaims. These claims are more appropriately considered by a jury who can consider and weigh the competing inferences and credibility of those involved. Indeed, in sexual harassment cases, it is often better to leave questions of consent, coercion, and intent to the jury, because these inquiries are both sensitive and fact-intensive.[FN1]

Plaintiff next appears to half-heartedly contend that the counterclaims fail to state a claim based solely on the notions that they were filed in a retaliatory fashion and contends they lack merit because of the text exchanges. This contention fails.
In considering a motion to dismiss, the Court must accept all factual allegations as true, accord the non-movant the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory. (Leon v. Martinez, 84 NY2d [*3]83, 87-88 [1994]).
The New York State Human Rights Law ("NYSHRL"), as amended in 2019, eliminated the "severe or pervasive" requirement for harassment claims, replacing it with a standard that merely requires a showing that a plaintiff was subjected to "inferior terms, conditions, or privileges of employment" because of her protected status. NY Exec. Law § 296(1)(h).
The New York City Human Rights Law ("NYCHRL") requires only that the plaintiff prove she was "treated less well than other employees" at least in part because of her gender. N.Y.C. Admin. Code § 8-107(1)(a).
Here, the allegations involving unwanted sexual contact, repeated sexual propositions, sexually explicit remarks, and retaliatory workplace mistreatment satisfies the pleading requirements under both the NYSHRL and NYCHRL (see Eustache v. Bd. of Educ. of the City Sch. Dist. of the City of NY, 228 AD3d 482, 483-84 [1st Dept 2024]).
It is also significant, as pointed out by defendant S.F., that Federal courts applying the standards under the NYSHRL and NYCHRL have held that a victim's continued contact with the alleged harasser does not, as a matter of law, negate coercion, hostility, or the absence of consent—particularly where the relationship involves a significant power imbalance, emotional manipulation, or threats of retaliation (See Menos v. City of New York, 2023 WL 5097873, at 14 [S.D.NY Aug. 9, 2023][rejecting argument that plaintiff's post-incident communications with supervisor demonstrated consent, emphasizing that continued contact can reflect fear of professional consequences]; Eckhart v. Fox News Network, LLC, 2025 WL 786536, at 12—13 [S.D.NY Mar. 12, 2025][denying summary judgment where plaintiff engaged in sexually explicit communications after alleged assaults, noting expert testimony that such conduct can be a common response to trauma in coercive workplace relationships]).
Thus, nothing alleged or admitted in defendant S.F.'s pleading warrants dismissal of her claims at this stage.
The counterclaims also sufficiently state a claim pursuant to the GMVA because they allege sexual assault and a pattern of sexual coercion and contact by a superior officer (see Eckhart v. Fox News Network, LLC, 2025 WL 786536, at 12-13[finding testimony describing multiple sexual assaults by a high-profile colleague—accompanied by coercive conduct, violent acts, and implied career related threats—raised genuine issues of fact for the jury]; see also Calle v. Kearney, 2025 WL 2172437, at 2 [S.D.NY July 31, 2025][denying Rule 12(b)(6) motion where the plaintiff alleged a years-long pattern of gender based violence, including degrading comments, physical abuse, and multiple acts of sexual assault such as forced oral sex in a moving vehicle]).
There is also no merit to plaintiff's contention that the counterclaims violate the Anti-SLAPP statute and should be dismissed on that ground. Critically, the purpose of the law is to protect individuals from frivolous lawsuits intended to chill their exercise of free speech or petitioning rights in connection with a matter of public interest (see A.R.P. v City of New York, 2026 NY Slip Op 50118(U), 88 Misc 3d 1217(A) [Sup Ct, NY County 2026]). As noted by Defendant S.F., the law does not "create immunity for private actors accused of unlawful, non-expressive conduct such as sexual assault, gender-motivated violence, coercion, and workplace retaliation" (Def. Memo of Law in Opp, pg. 26).
Indeed, dismissal based on violation of the Anti-SLAPP laws more commonly involve frivolous defamation claims and not complex, detailed, complicated claims of violations of the State and City Human Rights Law. Nor is it appropriate to utilize Anti-SLAPP laws to shield [*4]alleged unlawful conduct merely because it involved, in part, methods of communication.
Here, the counterclaims do not seek to penalize plaintiff for making protected statements in her complaint or otherwise. Rather, they seek redress for tangible, unlawful acts. The fact that the allegations were purportedly never made until the counterclaims were pleaded is of no moment. Filing counterclaims in response to a complaint occurs in the normal course of litigation and there is nothing inappropriate about the same. Nor is there a basis to find that such counterclaims are inherently or only an effort to chill plaintiff's advocacy.
While it may be the case that plaintiff's complaint involves a matter of public interest, thus potentially implicating the Anti-SLAPP provisions, assuming arguendo that it does, plaintiff has not demonstrated that defendant S.F.'s counterclaims lack a substantial basis in law. To the contrary, S.F. has convincingly argued that her counterclaims do have a substantial basis in law and fact, and if proven, would establish violations of the State and City Human Rights Law (see CPLR 3211[g]; Civil Rights Law 76-a[1][a]). 
Accordingly, the motion to dismiss the counterclaims is denied in its entirety.
3/18/2026Ariel D. Chesler, J.S.C.

Footnotes

Footnote 1:Counsel should be cautious in making motions to dismiss on ill-considered grounds in these types of delicate and complicated cases.